761 So.2d 1010 (1999)
Robert A. THOMAS, Petitioner,
v.
STATE of Florida, Respondent.
No. SC93070.
Supreme Court of Florida.
October 14, 1999.
Rehearing Denied June 8, 2000.
James Marion Moorman, Public Defender, and Cynthia J. Dodge, Assistant Public Defender, Tenth Judicial Circuit, Bartow, Florida, for Petitioner.
Robert A. Butterworth, Attorney General, Robert J. Krauss, Senior Assistant Attorney General, and John W. Klawikofsky, Assistant Attorney General, Tampa, Florida, for Respondent.
HARDING, C.J.
We have for review State v. Thomas, 711 So.2d 1241 (Fla. 2d DCA 1998), which expressly and directly conflicts with the opinion in State v. Howard, 538 So.2d 1279 (Fla. 5th DCA 1989). We have jurisdiction pursuant to article V, section 3(b)(3) of the Florida Constitution. For the reasons expressed below, we quash the decision of the Second District Court of Appeal in Thomas.
The facts of Thomas are as follows. On the evening in question, Robert Thomas entered the driveway of a residential home in which police were already present making arrests for narcotics offenses. While the detectives were in the residence, Officer Maney waited outside the residence in his patrol car. Officer Maney observed Thomas drive up to the house, park his car in the driveway, and get out of the vehicle. Upon exiting, Thomas walked to the rear of his vehicle, where Officer Maney met him and asked him his name and whether he had a driver's license. A check of Thomas's driver's license revealed an outstanding warrant for a probation violation. Officer Maney arrested Thomas and took him inside the residence. Officer Maney *1011 originally was unaware that there were narcotics in Thomas's car. However, a subsequent search after Thomas's arrest resulted in the discovery of a plastic bag containing white residue on the bottom of the driver's side door and three small bags of a white substance in the glove box. All of the bags tested positive for methamphetamine. Five minutes elapsed between the time Thomas exited his car, was placed under arrest, and was brought into the residence and Officer Maney's subsequent search of the vehicle.
Following a hearing, the trial court granted Thomas's motion to suppress based on State v. Howard, 538 So.2d 1279 (Fla. 5th DCA 1989). The district court reversed, relying on New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), and held that because the search of the vehicle was not under a preplanned pretext to conduct a warrantless search, the search was lawful because it was incident to the valid arrest of Thomas. See Thomas, 711 So.2d at 1243.
In Howard, the defendant was followed by a police officer who had knowledge of an outstanding warrant for his arrest for a probation violation. Howard drove into the parking lot of a convenience store, and upon exiting his car with a pouch in his hand, he spotted the officer and placed the pouch back into his car and locked the door. After Howard was arrested on the warrant, he then instructed his brother who was present at the scene not to allow the police to search his car. However, the officer took the keys from Howard's pocket and searched the vehicle and found contraband.
The trial court suppressed the evidence and the district court affirmed. The district court held that the officer did not have probable cause for a warrantless search of the car. The district court stressed that Howard had already exited his car and locked it. The district court stated that even though the officer's suspicions may have justifiably been aroused, there was no legitimate need or reason to search Howard's car as incident to his valid arrest. See Howard, 538 So.2d at 1280.
The district court in Thomas distinguished Howard based on the fact that the officer in Howard was in reality conducting a preplanned warrantless search, whereas in Thomas the officer did not know Thomas, nor was he aware of the fact that there was an outstanding warrant for his arrest. In reaching its decision, the district court in Thomas relied on Belton's bright-line rule regarding searches incident to arrests: "[W]e hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." New York v. Belton, 453 U.S. 454, 460, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) (footnote omitted). While we do not question the practicality of this bright-line test, nor its application to arrests that are initiated by the conduct of an officer, we believe there must be a distinction drawn when an individual voluntarily exits his car without provocation from law enforcement personnel and without knowledge of their presence.
In Belton, a New York State policeman was passed by another automobile driving at an excessive rate of speed. The officer gave chase, overtook the speeding vehicle, and ordered its driver to pull over to the side of the road and stop. After comparing the vehicle registration to the driver's licenses of the driver and the three passengers, one of whom was Belton, the officer discovered that none of the men owned the car, nor were they related to the owner. In the course of verifying their identification, the officer smelled marijuana emanating from the vehicle, and also saw an envelope marked "Supergold" on the floor of the car, which he associated with marijuana. The officer then directed the men to get out of the car and placed them under arrest for unlawful possession of marijuana. He opened the envelope, which contained marijuana, searched the passenger *1012 compartment, and found cocaine in a pocket of a leather jacket found in the car.
The United States Supreme Court in Belton referred to Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), for the proposition that a lawful custodial arrest justifies a contemporaneous search of an individual without a search warrant. The Court in Chimel concluded that such searches were necessary to (1) remove any weapons that the arrestee might have and (2) prevent the concealment or destruction of evidence. Relying on this reasoning, the Court in Belton held that when an officer has made a lawful arrest of the occupant of a vehicle, he may search the passenger compartment of that vehicle as long as it is in within the narrow time frame incident to the arrest. The Court did not state that the Chimel factors must be established before the vehicle can be searched; rather, the Court set up a bright-line rule to be applied in all cases. Florida's district courts have consistently applied this bright-line principle to analogous situations. See Shaw v. State, 449 So.2d 976 (Fla. 1st DCA 1984) (affirming denial of motion to suppress, even though defendant was handcuffed and placed in the officer's vehicle before the search was conducted); Chapas v. State, 404 So.2d 1102 (Fla. 2d DCA 1981) (upholding Belton search after defendant was ordered out of the car, arrested for driving while intoxicated, and placed in a police vehicle); State v. Valdes, 423 So.2d 944 (Fla. 3d DCA 1982) (holding the search of vehicle justified as a contemporaneous incident of the lawful arrest of defendant, notwithstanding that defendant was removed from the vehicle and placed in a nearby police cruiser); State v. Saufley, 574 So.2d 1207 (Fla. 5th DCA 1991) (upholding Belton search where defendant was pursued by an officer with siren on and lights flashing, arrested for driving under the influence, and placed in a patrol car, and two to three minutes later the officer searched the vehicle); see also United States v. White, 871 F.2d 41 (6th Cir.1989) (holding that Belton governs when an arrestee is removed from the car prior to the time of search); United States v. Karlin, 852 F.2d 968, 971-72 (7th Cir. 1988); United States v. Cotton, 751 F.2d 1146, 1149 (10th Cir.1985); United States v. McCrady, 774 F.2d 868, 871-72 (8th Cir.1985).
However, when searches occur beyond the scope of Belton's bright-line intent, the factors in Chimel of officer safety and evidence preservation must be present in order for a search incident to arrest to be lawful. The Supreme Court addressed the parameters of Belton's application in Knowles v. Iowa, 525 U.S. 113, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998). In Knowles, the defendant was only issued a traffic citation, and was not placed under arrest. Chief Justice Rehnquist, writing for the Court, held that a full search of an automobile pursuant to issuance of a citation for speeding violated the Fourth Amendment. The Court declared:
Here we are asked to extend that "bright-line rule" to a situation where the concern for officer safety is not present to the same extent and the concern for the destruction or loss of evidence is not present at all. We decline to do so.
Id. at 118-19, 119 S.Ct. 484. Not finding the circumstances to be analogous to the circumstances that were the foundation to the Belton decision, the Court declined to apply the bright-line test. Id.
In examining the application and limitations of Belton, we believe the Second District Court of Appeal in Chapas was correct in interpreting Belton as "establishing a rule applicable to all cases involving the arrest of a recent occupant of an automobile." See Chapas, 404 So.2d at 1104. However, the court in Chapas also stated that "[i]n this case, as in the Belton case, appellant was the occupant of an automobile who had been removed from the vehicle and placed under arrest." Id. at 1104-05 The district court compared the facts of its case to Belton, found the circumstances to be analogous, and therefore *1013 applied the bright-line rule. Hence, it can be inferred that the bright-line rule does not apply, as clarified by Knowles, when its application has been extended to a situation not contemplated by the Supreme Court in Belton. Rather, the Chimel factors of threat to officer safety or the necessity of preservation of evidence must be present to validate the search.
In State v. Vanderhorst, 419 So.2d 762 (Fla. 1st DCA 1982), the defendant was arrested for being intoxicated, and a subsequent search of his car revealed four quaaludes. The confrontation with the officer and the subsequent arrest and search were two-and-one-half hours after defendant's vehicle got stuck in the mud. The district court stated:
Because Belton incorporated within its opinion that language from Chimel limiting the scope of an officer's search which is reasonably incident to a lawful arrest, it follows that unless the arrestee was himself a recent occupant of the vehicle, the Belton rule has no applicability.
Id. at 764. The district court stressed that Chimel's justification was to deter an attempt made by the arrestee to remove any weapons that might aid in an escape, as well as to prevent the concealment or destruction of evidentiary items. Because the district court did not find the facts to be analogous to Belton, in that the timeliness was lacking, the court then shifted its focus to the concerns of officer safety and evidence preservation, which the court held could not be present at a time so far removed, and accordingly ruled the search was invalid. Again, when the foundation of Belton is extended beyond its original parameters, the bright-line rule is not automatically invoked.
The issue for us to decide in the present case is whether Belton extends to a situation where the first contact the defendant has with the officer occurs after exiting the vehicle. We find the recent analysis of the Sixth Circuit Court of Appeals in United States v. Hudgins, 52 F.3d 115, 119 (6th Cir.1995), persuasive:
The search of an automobile is generally reasonable even if the defendant has already been removed from the automobile to be searched and is under the control of the officer.

Where the officer initiates contact with the defendant, either by actually confronting the defendant or by signaling confrontation with the defendant, while the defendant is still in the automobile, and the officer subsequently arrests the defendant (regardless of whether the defendant has been removed from or has exited the automobile), a subsequent search of the automobile's passenger compartments falls within the scope of Belton and will be upheld as reasonable. See United States v. Strahan, 984 F.2d 155, 156 (6th Cir.1993).... Our decisions have consistently upheld the search of the passenger compartment of an automobile when the officer initiated contact with the defendant while the defendant was still within the automobile later searched, regardless of whether the defendant was arrested while actually occupying the automobile or after having recently been removed from the automobile. See United States v. Thomas, 11 F.3d 620, 628 (6th Cir.1993); United States v. Patterson, 993 F.2d 121, 122-23 (6th Cir.1993) (per curiam); [United States v.] White, 871 F.2d [41], 44 [(6th Cir.1989)]; United States v. Hatfield, 815 F.2d 1068, 1071-72 (6th Cir.1987). However, where the defendant has voluntarily exited the automobile and begun walking away from the automobile before the officer has initiated contact with him, the case does not fall within Belton's bright-line rule, and a case-by-case analysis of the reasonableness of the search under Chimel becomes necessary. See Strahan, 984 F.2d at 159 (stating that Belton was inapplicable and concluding that the search was unreasonable under Chimel).
(Emphasis added; citations omitted.)
We must caution, however, that in adopting this rationale, this Court is mindful *1014 that the arrest and subsequent search should not be invalidated merely because the defendant is outside of the automobile. The occupants of a vehicle cannot avoid the consequences of Belton merely by stepping outside of the vehicle as the officers approach. See United States v. Mans, 999 F.2d 966, 968-69 (6th Cir.1993) (upholding Belton search where officer's first verbal contact with defendant was when defendant was outside the car on ground that officer had initiated contact with defendant earlier when defendant knew he was being followed by officer); State v. McLendon, 490 So.2d 1308, 1309 (Fla. 1st DCA 1986) (highlighting the fact that "[t]o distinguish between arrests of persons in the car from arrests of persons recently vacating the car serves to severely diminish the purpose of the Belton decision").
In conclusion, we hold that Belton's bright-line rule is limited to situations where the law enforcement officer initiates contact with the defendant, either by actually confronting the defendant or by signaling confrontation with the defendant, and the officer subsequently arrests the defendant regardless of whether the defendant has been removed from or has exited the automobile. Applying the aforementioned analysis to the present situation, the record is clear that the defendant did not exit the vehicle upon the direction of the law enforcement officer. Because Belton does not apply, the trial court must determine whether the factors in Chimel justify the search of Thomas's vehicle. See Hudgins, 52 F.3d at 119 (concluding that where Belton is inapplicable, then "a case-by-case analysis of the reasonableness of the search under Chimel becomes necessary"). Based on the record in front of us, we are unable to ascertain whether Officer Maney's safety was endangered or whether the preservation of the evidence was in jeopardy. Under our interpretation, these findings are critical to a determination of the outcome, and therefore we quash the decision under review and remand for further proceedings consistent with this opinion.
It is so ordered.
SHAW, ANSTEAD, PARIENTE and LEWIS, JJ., concur.
WELLS, J., concurs in part and dissents in part with an opinion.
QUINCE, J., recused.
WELLS, J., concurring in part and dissenting in part.
I concur in the result in this case because I believe that the United States Supreme Court decision in Knowles v. Iowa, 525 U.S. 113, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998), is a Supreme Court application of the Fourth Amendment to the United States Constitution that is sufficiently analogous to control the specific facts here. In this case there was no reasonable basis related to the vehicle to search Thomas; nor was there an arrest made related to the vehicle.
However, I dissent from the dicta which places serious limitations on New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), that are not within the United States Supreme Court's decision. Pursuant to article I, section 12, we are bound by interpretations in respect to the Fourth Amendment by the United States Supreme Court. In Belton, the court held only that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." Id. at 460, 101 S.Ct. 2860. Belton does not add as a condition "where the law enforcement officer initiates contact with the defendant either by actually confronting the defendant or signaling confrontation with the defendant." The reason for this bright-line rule is officer safety, which is equally as much a concern whether the officer initiates the contact, actually confronts the person, or the person voluntarily exits the vehicle as long as the connection *1015 with the vehicle is proximate to the arrest.